UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**CRYSTAL MARIE CONRAD,**

    Plaintiff,

v.                                                                                                            2:23-cv-900-NPM

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.

## OPINION AND ORDER

Plaintiff Crystal Marie Conrad seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 8),[1] Conrad filed an opening brief (Doc. 12), and the Commissioner responded (Doc. 13). As discussed in this opinion and order, the decision of the Commissioner is reversed and remanded.

**I.    Eligibility for Disability Benefits and the Administration's Decision**

    **A.    Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B. Factual and procedural history

On September 15, 2020, Conrad applied for disability insurance benefits. (Tr. 163, 210, 216). She asserted an onset date of January 9, 2019, alleging disability due to the following: bipolar, depression, posttraumatic stress disorder (PTSD), and back and neck injury. (Tr. 165, 169). As of the alleged onset date, Conrad was 25 years old and had a high school education. (Tr. 165, 170). Conrad previously worked as a

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. § 404.1505.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 404.1594(b)(4) (defining functional capacity to do basic work activities).

[4] *See* 20 C.F.R. § 404.1511.

medical records clerk and receptionist. (Tr. 27, 170).

On behalf of the administration, a state agency [5] reviewed and denied Conrad's application initially on December 23, 2020, and upon reconsideration on May 6, 2022. (Tr. 90, 95). At Conrad's request, Administrative Law Judge (ALJ) Ryan Johannes held a hearing on February 9, 2023. (Tr. 37-63). The ALJ issued an unfavorable decision finding Conrad not disabled. (Tr. 14-33). Conrad's timely request for review by the administration's Appeals Council was denied. (Tr. 1-3). Conrad then brought the matter to this court, and the case is ripe for judicial review.

### C.     The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 404.1503(a).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a

qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Conrad had not engaged in substantial gainful activity since January 9, 2019, the alleged onset date. (Tr. 19). At step two, the ALJ characterized Conrad's severe impairments as: lumbar degenerative disc disease; cervical degenerative disc disease; and migraines. *Id.* At step three, the ALJ determined Conrad did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 21).

> As a predicate to step four, the ALJ arrived at the following RFC:
>
> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional climbing stairs and ramps; never climbing ladders and scaffolds; frequent balancing; occasional stooping; frequent kneeling or crouching; never crawling; frequent handling or fingering; avoid concentrated exposure to vibration; avoid all exposure to moving mechanical part and unprotected heights; and work can be performed sitting or standing alternatively every thirty minutes provided that they are not off work 10% of the work period.

(Tr. 23). At step four, the ALJ found Conrad unable to perform her past relevant work because the functional demands exceeded her RFC. (Tr. 27-28). At step five, the ALJ found Conrad could perform other work that exists in significant numbers in the national economy. (Tr. 28). In support, a vocational expert opined during the

5

ALJ hearing that three occupations represent the kinds of jobs that an individual of Conrad's age, education, work experience, and RFC can perform:

- *Marker* (DOT# 209.587-034); light; SVP 2; with 53,000 positions in the national economy;
- *Garment Sorter* (DOT# 222.687-014); light; SVP 2; with 23,000 positions in the national economy;
- *Classifier* (DOT# 361.687-014); light; SVP 2; with 55,000 positions in the national economy.

(Tr. 28).[6] Thus, for purposes of the Act, the ALJ concluded Conrad was not disabled from January 9, 2019, the alleged onset date, through February 27, 2023, the date of decision. (Tr. 29).

## II.   Analysis

Conrad's appeal presents several issues, but one requires remand—the ALJ's failure to resolve the apparent conflict between the RFC's stand/walk limitation and the stand/walk demands of the occupations the vocational expert offered as examples of the work Conrad could perform.

---

[6] The DOT numbers refer to the Dictionary of Occupational Titles and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

### A. The ALJ's duty to resolve apparent conflicts

ALJs have an ***affirmative duty*** to identify and resolve apparent conflicts between a claimant's limitations and the demands of occupations—as defined in the DOT—that a vocational expert offers as examples of the work that a claimant can perform. *Washington*, 906 F.3d at 1356. "During or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id*. at 1363. And whenever a conflict is apparent, the ALJ must also ask the vocational expert about it. This involves more than simply asking the expert to confirm no conflict, but to provide a reasonable explanation for any apparent discrepancy. *See id*. Finally, the ALJ's decision must detail how the conflict was resolved. An ALJ's failure to fully discharge this duty prevents the expert's contradicted opinion from serving as substantial evidence. *See id*. at 1356.

### B. The ALJ's failure to resolve an apparent conflict

During the hearing, the ALJ asked the vocational expert to opine about the number of available jobs in the national economy for someone of Conrad's age, education, and work experience and limited to, among other things, sitting or standing alternatively, every thirty minutes provided they are not off work 10% of the work period. (Tr. 60). Opining that such jobs existed in significant numbers, the expert referred to the occupations of marker, garment sorter, and classifier as examples. (Tr. 60-61). The ALJ asked the expert whether there were any conflicts

7

between this opinion testimony and the demands of these occupations as described in the DOT. (Tr. 61). The expert replied:

> No conflicts, Your Honor, with the exception of the intervals of sitting and standing every thirty minutes, the on-task rate, and the absenteeism, all would be based on my education and experience in the vocational field.

*Id.* Nevertheless, the ALJ did not ask the expert to provide a reasonable explanation for the discrepancy between these occupations as "light work" and Conrad's limitation of alternating between sitting and standing every thirty minutes, i.e., standing for four hours and sitting for four hours in an 8-hour day.

As we reasoned in *Horne v. Commissioner of Social Security*, No. 2:20-cv-181-JLB-MRM, 2021 WL 3023679 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, 2021 WL 3022727 (July 16, 2021), light work generally requires an ability to walk for about six hours a day, because—by definition—light work involves carrying up to ten pounds frequently. *Id*. at *14 (citing SSR 83-10, 1983 WL 31251, at *6 (S.S.A. 1983)). Indeed, the governing regulations explain that light work "requires a good deal of walking or standing …." 20 C.F.R. § 404.1567(b). And given the ALJ's failure to explore this issue with the vocational expert, we must reverse and remand for a proper resolution of this conflict. *See Horne*, 2021 WL 3022727 at *1; *see also*, *Hayer v. Comm'r of Soc. Sec.*, No. 2:21-cv-436-SPC-NPM, 2022 WL 3567358, *4 (M.D. Fla. Aug. 3, 2022), *report and recommendation adopted*, 2022 WL 3544374 (Aug. 18, 2022) (agreeing with *Horne*

8

that ALJ failed to resolve an apparent conflict between light-work jobs and a stand/walk limitation of four hours in the RFC); *Knapp v. Kijakazi*, No. CA 21-0394-MU, 2022 WL 1019988, *6 (S.D. Ala. Apr. 5, 2022) (same).

## III.  Conclusion

The ALJ relied on opinion testimony from a vocational expert without properly resolving an apparent conflict between the testimony and the DOT. This constitutes reversible error. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018). On remand, any issues relating to the claim may be considered by the Appeals Council or administrative law judge whether or not they were previously raised in the administrative proceedings. *See* 20 C.F.R. § 404.983(a). Accordingly, the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment in Conrad's favor.

**ORDERED** on March 10, 2025

NICHOLAS P. MIZELL
United States Magistrate Judge

9